**United States District Court**
**District of Massachusetts**

<table>
<tr><td>

Umuoji Improvement Union (North
America), Inc.,

     Plaintiff,

     v.

Umuoji Improvement Union (North
America), Inc., et al,

     Defendants.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Civil Action No.
20-12229-NMG

</td></tr>
</table>

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Umuoji Improvement Union (North America), Inc. ("Umuoji I" or "plaintiff") brings suit against Umuoji Improvement Union (North America), Inc. ("Umuoji II"), Umuoji Improvement Union, Massachusetts, Inc. ("Umuoji, MA"), Victor Ide-Okoye ("Ide-Okoye") and Ogor Winnie Okoye ("Okoye") (collectively "defendants").

Umuoji I alleges that Umuoji II unlawfully used its name and services as a means of tarnishing its reputation, diluting the quality of its name and lessening the capacity of the name to identify and distinguish its services. Plaintiff asserts that such conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Lanham Act") (Count I) and Massachusetts General Laws c. 110h § 12 ("Chapter 110h") (Count II) and

-1-

constitutes fraud (Count III), unjust enrichment (Count IV), slander of business title (Count V) and tortious interference with contract (Count VI).

Pending before the Court are Umuoji I's motion for a preliminary injunction and Umuoji II's motions to dismiss and for a hearing.  For the reasons that follow, plaintiff's motion will be allowed, in part, and denied, in part, and defendants' motions will be denied.

I.   **Background**

In 2009, Umuoji Improvement Union (North America), Inc. ("UIU") filed articles of incorporation in Nebraska as a non-profit organization and has, since, received tax-exempt status pursuant to § 501(c)(3) of the Internal Revenue Code.  The organization has the charitable purpose of raising funds to benefit the people of Umuoji, Nigeria and is comprised of members of Umuoji descent.

In July, 2017, UIU elected Ide-Okoye, a Massachusetts resident, as president of the organization but, according to plaintiff, removed him in November, 2018, due to purported impropriety.  That alleged removal caused the governance of UIU to split into two competing "factions".  Plaintiff asserts that its faction represents the original UIU which was organized in and has operated under the laws of the State of Nebraska since 2009 with its principal place of business in that state.

Plaintiff alleges that, in 2019, the competing faction (led
by Ide-Okoye) improperly filed articles of organization for
Umuoji II in Massachusetts as a "counterfeit" non-profit
corporation, although UIU's status remains active in Nebraska.
Currently, Ide-Okoye is the president of Umuoji II and the
director of Umuoji, MA, a purported subsidiary of the
"counterfeit" Massachusetts corporation.  He is married to
defendant Okoye, who likewise is a Massachusetts resident, a
founding officer of Umuoji, MA and an attorney of record for all
defendants.

Defendants, on the other hand, contend that Umuoji II is
the original UIU and that defendants are the true owners of the
disputed trademark and trade name.  They explain that Ide-Okoye
was never formally removed as president of UIU and, thus,
remains the duly elected president of the 501(c)(3)
organization.  Defendants add that, in 2019, President Ide-Okoye
removed the domicile of UIU from Nebraska to Massachusetts with
the authorization of UIU members and that the non-profit
organization no longer has any presence in Nebraska.

The official records of the Secretaries of State of both
states list "Umuoji Improvement Union (North America), Inc." as
active, domestic non-profit organizations.  Umuoji I declares
that Umuoji II is the counterfeit organization while defendants
assert the opposite.  Both parties have proffered various

documents in support of their conflicting contentions (including three different but equally incomprehensible sets of by-laws) and accuse each other of having presented fraudulent documentation.

## II.   <u>Plaintiff's Motion for a Preliminary Injunction</u>

Plaintiff moves for a preliminary injunction 1) to prevent defendants from using the name, Umuoji Improvement Union (North America), Inc., and from acting as its agents and 2) to direct defendants to account to plaintiff for all sums of money, profits and gains which defendants have earned for their own account since September, 2017, the date on which Umuoji II was organized in the Commonwealth of Massachusetts.  Plaintiff submits that the essence of this case is not whether Mr. Ide-Okoye was removed as President of the organization but, rather, whether he unlawfully organized counterfeit organizations under the same name in Massachusetts in order to compete with Umuoji I.

Defendants respond that plaintiff's motion is without merit because plaintiff has failed to prove either that it owns a trademark in the name "Umuoji Improvement Union (North America), Inc." or that Ide-Okoye was formally removed as the President of Umuoji I.  Defendants contend that, in any event, plaintiff's true motive is not to claim ownership of the trade name but, instead, to obtain control over $50,000 which has been raised by

-4-

Umuoji II to build a medical center in Umuoji, Nigeria.
Finally, defendants aver that the equities are in their favor
because it is their "faction" of UIU which has most recently
performed charitable work, namely, completing the construction
of the subject medical center.

Oral argument was heard on the pending motions on February
26, 2021, which brought little clarity to this internal, self-
destructive feud.

### A. Legal Standard

In order to obtain a preliminary injunction, the moving
party must establish 1) a reasonable likelihood of success on
the merits, 2) the potential for irreparable harm if the
injunction is withheld, 3) a favorable balance of hardships and
4) the effect on the public interest. Jean v. Mass. State
Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of these
factors, the likelihood of success on the merits "normally
weighs heaviest in the decisional scales." Coquico, Inc. v.
Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in
the complaint] and uncontroverted affidavits." Rohm & Haas Elec.
Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2
(D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1
(1976)).  The Court may also rely on otherwise inadmissible
evidence, including hearsay, in deciding a motion for

-5-

preliminary injunction. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).

Ultimately, however, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).  It should issue "only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (citation and internal quotations omitted).

### B. Application

Although likelihood of success on the merits inquiry is only the first of four factors, it is by far the most significant. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) ("[W]hether the plaintiffs are likely to succeed on the merits" is the "sine qua non" of the test for a preliminary injunction.").  That is especially true in a trademark case because the resolution of the other three factors will depend, in large part, on whether plaintiff is likely to succeed in establishing infringement. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).  This focus on likelihood of success is consistent with the idea that, "as a

matter of public policy, trademarks should be protected against infringing use." Id.

    i.  <u>Trademark Infringement and False Designation of Origin</u>

      To prevail on a claim under the Lanham Act based on "false designation of origin," 15 U.S.C. § 1125(a)(1)(A), plaintiff must prove

> 1) the ownership of a distinctive mark entitled to trademark protection, 2) the use of that name in interstate commerce, and 3) its use by another in a manner likely to cause confusion as to the origin of the source of the goods or services.

<u>Nat'l Nonwovens, Inc.</u> v. <u>Consumer Products Enterprises, Inc.</u>, 397 F. Supp. 2d 245, 257 (D. Mass. 2005). Nearly identical standards apply to trademark infringement claims brought under Mass. Gen. Laws ch. 110H, § 12. <u>See</u> <u>Boston Granite Exchange, Inc.</u> v. <u>Greater Boston Granite, LLC</u>, No. 11-cv-11898, 2012 WL 3776449, at *5 (D. Mass. Aug. 29, 2012).

      In this case, the over-riding issue is which party owns and has rights in the name, "Umuoji Improvement Union (North America), Inc.".[1]  Both parties claim to be the rightful owner of the mark and proffer convoluted evidence in support thereof. Having considered the written and oral submissions of the

---

[1] In defendants' own words,

> [t]he matter in controversy then, as now is; [sic] whether Plaintiff's faction of [Umuoji Improvement Union (North America), Inc.] or Defendants (Ide Okoye's) faction has the legal ownership of [the organization].

parties, this Court concludes that, although the facts remain
muddled, there is a greater likelihood that plaintiff is the
original UIU and, thus, the owner of the subject mark.

It is undisputed that UIU was organized in Nebraska in 2009
and has, since, obtained tax-exempt status pursuant to
§ 501(c)(3) of the Internal Revenue Code.  Although defendants
contend that UIU subsequently changed its domicile to
Massachusetts in 2019 (creating Umuoji II) and removed its
presence from Nebraska, plaintiff has shown that Umuoji I
remains "active" in Nebraska, has not been dissolved and is
current in its Nebraska filings.  Furthermore, the person
currently registered as the Treasurer of Umuoji I, Cletus Ezeji,
is also registered as the principal officer on the § 501(c)(3)
filing with the Internal Revenue Service ("IRS").  In contrast,
Umuoji II was organized only after the contested removal of Ide-
Okoye as President of UIU and none of its registered officers is
listed on any recent filing with the IRS pursuant to
§ 501(c)(3).

For those reasons, this Court will allow plaintiff's motion
for a preliminary injunction to the extent it seeks to prevent
defendants from using its corporate name, at least until further
clarification of which "faction" of corporate management the
membership of the organization chooses to endorse.  See also 7-
Eleven, Inc. v. Grewal, 60 F. Supp. 3d 272, 280-82 (D. Mass.

2014) (finding the remaining three preliminary injunction factors easily met in a trademark infringement case because plaintiff established a likelihood of success on the merits).

While the preliminary injunction is in effect, the parties shall, with the guidance of a mediator or master (to be selected pursuant to the following paragraphs):

> 1) call a special, emergency meeting of all members of the Umuoji Improvement Union (North America), Inc. to vote on the election of officers and/or directors to determine which "faction" of management should be in control of the organization;
>
> 2) prepare, with the assistance of competent counsel, and adopt by vote of the membership new, comprehensible by-laws; and
>
> 3) file dissolution of the articles of incorporation/ organization in the state of the losing "faction" (either Massachusetts or Nebraska) unless good cause is shown not to do so.

The Court is aware that, pursuant to its equitable powers, it is authorized to appoint a custodian to manage the internal affairs (i.e., inter alia, a meeting and election) of a corporation the control of which is contested and, therefore, deadlocked. See Fed. R. Civ. P. 66; Neb. Rev. Stat. § 25-1081(8) (permitting the appointment of a receiver "in all other cases when receivers have heretofore been appointed by the usages of courts of equity"); Gardner v. Larkin, No. 19-cv-139, 2020 WL 831860, at *23 (D.R.I. Feb. 20, 2020) ("One circumstance in which a receiver may be appointed [by a court of equity] is when

-9-

the owners of an entity . . . are in deadlock . . . [which] has paralyzed corporate functioning.").  It is likewise permitted to appoint a master to oversee the implementation of a preliminary injunction with which noncompliance is projected. See Fed. R. Civ. P. 53(a); Concillo de Salud Integral de Loiza, Inc. v. Perez-Perdomo, 551 F.3d 10, 19 (1st Cir. 2008) (noting that the prospect of noncompliance with a preliminary injunction warrants the appointment of a master).

The Court will appoint a master (or, if necessary, a custodian) pursuant to its authority outlined above unless the parties consent to the appointment of a mediator with appropriate expertise in corporate organization.  The mediator would have a limited role of supervising an emergency meeting of the membership to choose managers of the organization, oversee the adoption of new, comprehensible by-laws and make a written report to the Court.  The mediator will be compensated at a fair hourly rate for up to 50 hours of work, the cost of which will be borne equally by the parties.

If the parties agree to the appointment of a mediator, they will so inform the Court on or before Friday, May 14, 2021, whereupon they shall subsequently meet and attempt to agree upon an individual mediator with appropriate expertise in corporate organization matters to be the designated mediator in this case. If they cannot agree upon the designation of a specific mediator

on or before Friday, May 28, 2021, they will each submit three names of proposed mediators to the Court on that date, from which the Court will choose one.

If the parties do not agree with the Court's proposal to appoint a mediator on or before Friday, May 14, 2021, the Court will convene a video conference on Friday, May 21, 2021, at 10:00 A.M. to consider the appointment of a master pursuant to Fed. R. Civ. P. 53 who will assume duties assigned to him or her by the Court at the expense of the parties.

If, after consideration of the above, the parties ultimately agree to the appointment of a mediator, he or she will perform the tasks described and submit a written report to the Court within 60 days after his or her appointment, whereupon the Court will convene a status conference to further consider the continuation of the preliminary injunction imposed in this case.

III.  **<u>Defendant's Motion for Joinder by the Court and to Dismiss Plaintiff's Complaint</u>**

**A. Failure to Join a Party Under Rule 19**

Defendants move pursuant to Fed. R. Civ. P. 12(b)(7) to dismiss the complaint for failure to join various individual officers of Umuoji I.  Fed. R. Civ. P. 19 protects the interest of parties not yet a part of the ongoing litigation.  Courts assessing a motion filed under Rule 19 are instructed to engage

in a two-part analysis, by first determining whether the absent party is "necessary" to the action under the criteria set forth in subsection (a) and, if so, by then determining whether the action should proceed without the absent party based on the criteria laid out in subsection (b). See Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010).

A party is "necessary" under Rule 19(a) if either (A) the court cannot provide complete relief without joining the absent party or (B) the absent party claims such an interest in the subject of the action that proceeding without the party may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). The interest claimed must be a "legally protected interest" relating to the subject matter of the action. United States v. San Juan Bay Marina, 239 F.3d 400, 406 (1st Cir. 2001). The mere fact that the outcome of a case "may have some financial consequences for the non-parties" is, however, insufficient to deem them "necessary".

Even if a party is "necessary", a case need not be dismissed for failure to join that party unless it is also indispensable pursuant to Rule 19(b). The "critical question" in the Rule 19(b) context is "whether in equity and good conscience the action may proceed in the party's absence."

-12-

Jimenez, 597 F.3d at 25 (internal quotation marks and citation omitted).  To make that determination, a court must consider four factors: 1) the anticipated prejudice which would result if judgment were rendered in the party's absence, 2) the extent to which that prejudice can be avoided, 3) the adequacy of such a judgment and 4) whether plaintiff would be left without remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

As the moving party, defendants have the burden of proof to establish that the absent individuals are both necessary and indispensable pursuant to Rule 19. See Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., No. 789 F. Supp. 1201, 1208 (D.N.H. 1992).  Here, however, defendants have failed to meet that burden.  As plaintiff avers, the pending action seeks to enjoin defendants from 1) using the trademark of Umuoji Improvement Union (North America), Inc. and 2) holding themselves out as representatives of the organization.  This Court can resolve that dispute without joining the absent individual officers identified by defendants.  Accordingly, the Court will not dismiss this action for failure to join a necessary party.

**B. Lack of Standing**

    **1.    Legal Standard**

In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If defendant asserts a "sufficiency challenge", the Court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the Court will consider the allegations by both parties to resolve the factual disputes. Id.

Pursuant to Article III of the United States Constitution, the jurisdiction of federal courts extends only to actual "cases" and "controversies" involving the legal rights of litigants who have a "personal stake in the outcome of the controversy". Baker v. Carr, 369 U.S. 186, 204 (1962); U.S. Const. art. III, § 2, cl. 1.  To show such a personal stake, otherwise known as "standing", a plaintiff must establish 1) an

-14-

"injury in fact", 2) a causal connection between that injury and the challenged conduct and 3) a likelihood that the injury will be redressed by a favorable decision of this Court. <u>Lujan</u>, 504 U.S. at 560-61.

### 2.   Application

Defendants contend that Umuoji I lacks standing to bring this action because it has made no demand on the corporation's board of directors as required under Fed. R. Civ. P. 23.1 and the complaint has stated no injury in fact.  The Court, however, finds both arguments unpersuasive.

First, Rule 23.1 is inapplicable to the pending action. Plaintiff is not a shareholder bringing a derivative lawsuit on behalf of a corporation. <u>See</u> <u>Evangelist</u> v. <u>Fidelity Management & Research Co.</u>, 554 F. Supp. 87, 90 (D. Mass. 1982) ("[Rule 23.1] is thus primarily addressed to the question of <u>who</u> will pursue the claim—the corporation through its directors or the shareholder in a derivative suit." (emphasis in original)). Instead, plaintiff is the corporation itself, bringing its own claims as a distinct legal entity against individuals who purportedly have "no rightful affiliation" with it. <u>See</u> M.G.L. c. 155, § 6 (granting Massachusetts corporations the right to sue and be sued); Neb. Rev. Stat. § 21-227 (same for Nebraska corporations); <u>Imperial Motors, Inc.</u> v. <u>Chrysler Corp.</u>, 559 F. Supp. 1312, 1314 (D. Mass. 1983) (explaining that when a

-15-

corporation is injured, either the corporation itself <u>or</u> a
stockholder suing derivatively in the name of the corporation
may sue to redress the injury).

As for its alleged injury in fact, the plaintiff non-profit
has stated plausibly that defendants' continued use of its name
will cause confusion among prospective donors and, therefore,
cause plaintiff to suffer damages and reputational injury.  Such
allegations are cognizable injuries for the purpose of Article
III standing.  Accordingly, the Court finds that plaintiff has
plausibly alleged standing to bring this suit.

### C. Failure to State a Claim

#### 1.    Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the
subject pleading must contain sufficient factual matter to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678
(2009) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw
the reasonable inference that the defendant is liable for the
misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d
1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents

-16-

incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. <u>Id.</u> at 13.

### 2.   Application

#### i.   <u>Res Judicata</u>

Defendants argue that this case should be dismissed on <u>res judicata</u> grounds. The doctrine of <u>res judicata</u>

> bars a plaintiff from litigating claims in a subsequent action that could have been, but were not, litigated in an earlier suit.

<u>Silva</u> v. <u>City of New Bedford</u>, 660 F.3d 76, 78 (1st Cir. 2011). An earlier judgment gives rise to claim preclusion where 1) the prior action resulted in a final judgment on the merits, 2) the causes of the action alleged in both suits are sufficiently identical or related and 3) the parties are likewise sufficiently identical or closely related. <u>Airfraime Systems, Inc.</u> v. <u>Raytheon, Co.</u>, 601 F.3d 9, 14 (1st Cir. 2010).

The first action that purportedly has preclusive effect on the instant lawsuit is <u>Victor Ide-Okoye</u> v. <u>Anthony N. Enwese, et al.</u>, Essex County Superior Court (Newburyport), No. 1977-cv-

00310.  That action has not been adjudicated to a final judgment on the merits but, instead, remains pending in the Massachusetts Superior Court.  Thus, it cannot have a preclusive effect on this case.

The second proffered action, Umuoji Improvement Union (North America), Inc. v. Pearl Oguchi, et al, District Court, 268th Judicial District (Fort Bend, Texas), No. 19-dcv-258782 ("the Texas action"), does not share a common nucleus of operative facts with this case. See Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011).  In fact, Ide-Okoye filed the Texas action in January, 2019, two months before Umuoji II was incorporated in Massachusetts.  Meanwhile, the underlying factual allegations in this case, namely, that Ide-Okoye

> created several counterfeit organizations in the Commonwealth of Massachusetts using the name of [Umuoji Improvement Union (North America), Inc.],

depend, in large part, on the incorporation of Umuoji II in February, 2019, and its continued existence in the Commonwealth. Accordingly, the two actions are insufficiently identical for the doctrine of res judicata to apply.

Finally, the third supposedly relevant action is Umuoji Improvement Union (North America), Inc. v. Victor Okoye, County Court of Nebraska (Lancaster), No. 18-cv-14709 in which Umuoji I sued Ide-Okoye for unlawful conversion of funds.  The Nebraska

-18-

state court ultimately granted summary judgment in favor of Ide-Okoye based upon its finding that UIU's national executive committee had authorized Ide-Okoye to expend $10,000 in support of the medical center project.  In coming to that conclusion, the court made no factual findings with respect to events after 2018, and expressed no opinion as to whether 1) Ide-Okoye had been removed as President in November, 2018, or 2) UIU had, thereafter, transferred its domicile to Massachusetts.

The dispute in this action, in contrast, concerns the legality of the incorporation of an organization in Massachusetts in 2019 under the same name as the plaintiff corporation which is (and has been since 2009) organized and operating in Nebraska.  Accordingly, as with the Texas action, the Nebraska case does not share a common nucleus of operative facts with this case and the doctrine of res judicata is inapplicable. Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011) (explaining that a court considering an argument for claim preclusion must apply a "transactional approach" in which it analyzes whether the underlying factual bases for the causes of action are "related in time, space, origin or motivation.").[2]

---

[2] Plaintiff also brought an action in the District Court of Lancaster County, Nebraska seeking the same equitable relief it seeks in this case but that case was dismissed on personal jurisdiction grounds and, thus, does not preclude the pending litigation. See Umuoji Improvement Union (North America), Inc. v. Victor Okoye, No. 20-CI-519 (Sep. 2, 2020).

###                    ii.    Trade Infringement and False
                              Designation

Finally, defendants do not contend that the factual

allegations in the complaint, when taken as true, fail to state

a claim for trademark infringement and false designation under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.  Instead,

they merely assert that

>      the courts have ruled that, at all relevant times the
>      [Umuoji Improvement Union], its trade name and mark belongs
>      to the Defendants of the Ide Okoye faction.

A review of the reported opinions of other courts, however,

reveals that none of them has ruled definitively to that effect.

Because defendants advance no other argument under Fed. R. Civ.

P. 12(b)(6), this Court will deny defendants motion to dismiss

for failure to state a claim.

**ORDER**

For the foregoing reasons, plaintiff's motion for a preliminary injunction (Docket No. 2) is, **ALLOWED,** in part, and **DENIED,** in part, as set forth in the preliminary injunction attached hereto marked "Exhibit A".

Defendants' motion to dismiss (Docket No. 10) is **DENIED without prejudice** and defendants' motion for a hearing thereon (Docket No. 31) is **DENIED as moot.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 4, 2021